UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LLOYD WILLIAMS,                                    :

                Petitioner,                    :

            - v -                          :          **MEMORANDUM DECISION**

JAIFA COLLADO, Superintendent of           :          19-CV-03407 (DC)
the Otisville Correctional Facility,

                        :

                Respondent.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          LLOYD WILLIAMS
                      Petitioner *Pro Se*
                      DIN 13A1831
                      Shawangunk Correctional Facility
                      P.O. Box 700
                      Wallkill, NY  12589

                      ANNE T. DONNELLY, Esq.
                      District Attorney
                      Nassau County
                      By:    Tammy J. Smiley, Esq.
                              Jason R. Richards, Esq.
                              Assistant District Attorney
                      262 Old Country Road
                      Mineola, NY  11501
                            Attorney for Respondent

CHIN, Circuit Judge:

        On September 28, 2012, following a jury trial, Lloyd Williams was

convicted in the Supreme Court of the State of New York, Nassau County (Robbins, *J.*),

of twenty-three counts -- including depraved indifference murder and aggravated vehicular homicide -- for colliding with another vehicle while driving under the influence of alcohol and marijuana, resulting in serious injury to Williams's passenger and the death of the other driver.  *See* Dkt. 16-5 at 469-74.  Williams was sentenced to multiple concurrent terms of imprisonment, the longest of which was twenty-five years to life.  *See* Dkt. 16-38 at 16-18.

The Appellate Division, Second Department, affirmed his convictions for one count each of depraved indifference murder and second-degree assault, four counts of aggravated vehicular homicide, and three counts of aggravated vehicular assault, and vacated the remaining fourteen convictions as inclusory concurrent counts.  *See People v. Williams*, 55 N.Y.S.3d 381 (2d Dep't 2017) ("*Williams I*").  The New York Court of Appeals denied leave to appeal.  *See People v. Williams*, 86 N.E.3d 577 (N.Y. 2017) (DiFiore, *C.J.*) ("*Williams II*").

On June 5, 2019, Williams petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition").  *See* Dkt. 1.  The Nassau County District Attorney's Office opposed the Petition on September 13, 2019, and Williams replied on November 25, 2019.  *See* Dkts. 16, 21.  On May 12, 2023, the case was reassigned to the undersigned.  For the reasons set forth below, Williams's Petition is DENIED.

## BACKGROUND

I.      **The Facts**

The evidence at trial established the following:

On the night of June 17, 2011, Williams smoked marijuana until he was high, then drove with a revoked driver's license to Phase Bar (the "Bar") in Freeport, New York, to celebrate his birthday. *See* Dkt. 16-5 at 51-53, 95-96. At approximately 3:00 A.M., the Bar's bouncer, Larry McCloud, removed Williams from the Bar after observing that he had become intoxicated, was acting "[v]ery wild," and had elbowed another patron in the face. *See* Dkt. 16-4 at 468-70. Outside, a fight ensued among Williams, his friend Laron Harrison, and McCloud, which was recorded by the Bar's video surveillance system. *Id*. at 482, 519. The fistfight ended when a gunshot was fired. *Id*. at 575-76. Detective Lieutenant Wayne Giglio had just arrived at the Bar in an unmarked police car when Harrison told him that he had been shot. *Id*. at 586-88. Harrison then immediately ran away, jumped into the passenger seat of Williams's car, and fled the scene with Williams driving. *Id*. at 588-89.

With activated police lights and sirens, Detective Giglio followed Williams's car through a residential neighborhood for about two miles. *Id*. at 589-93, 644-45. Williams ran several stop signs and red traffic lights, consistently exceeding the speed limit of thirty miles per hour with speeds of sixty and seventy miles per hour. *Id*. at 591-94, 613-14.

At about 3:08 A.M., Williams ran another red light at an intersection and crashed into a car driven by twenty-four-year-old Chad Whethers.  *Id*. at 460, 623-24.  A surveillance camera at the intersection recorded the collision.  *Id*. at 623.  The impact split Whethers's vehicle in two, instantly killing him.  *Id*. at 423; Dkt. 16-3 at 318-19.

Williams's vehicle was found approximately 150 feet down the road from Whethers, on the front lawn of a residence.  *See* Dkt. 16-4 at 622.  The resident, awakened by the sound of the crash, reported to police that he saw the driver stand around the vehicle "in a daze," Dkt. 16-3 at 414, and then limp towards the rear of the home, *id.* at 415.  Police found Williams crouching in a nearby alleyway.  *Id*. at 500-01.  His speech was slurred, his eyes glassy and bloodshot, and he smelled of alcohol.  *Id*. at 502.  Williams was arrested and transported to the hospital.  *Id*. at 503.

Harrison remained in the front passenger seat until the fire department extricated him from Williams's vehicle, using the "jaws-of-life."  *Id*. at 325-26.  Harrison suffered a cervical spine fracture from the collision, but presented no gunshot wound or other indications of having been shot.  *See* Dkt. 16-4 at 220, 226.

A blood sample taken from Williams at 4:16 A.M., just over one hour after the accident, indicated that his blood alcohol content ("BAC") was 0.25%, *id*. at 67, "three times the legal limit," Dkt. 16-5 at 316.  The sample also contained THC, the active

ingredient in marijuana.  *See* Dkt. 16-4 at 67.[1]  At 9:45 A.M., after Williams had refused

two subsequent requests for blood testing, the police obtained a second sample from

Williams pursuant to a court order.  *Id.* at 110-15.  That sample, taken over six-and-half

hours after the crash, indicated that Williams's BAC was 0.13% and that he continued to

test positive for marijuana.  *Id.* at 287, 294.[2]

## II.   *Procedural History*

### A.   State Court Proceedings

Williams was indicted on twenty-four counts:  one count of second-degree

depraved indifference murder; four counts of aggravated vehicular homicide; three

counts of first-degree vehicular manslaughter; one count of second-degree

manslaughter; three counts of aggravated vehicular assault; three counts of first-degree

vehicular assault; one count of first-degree depraved indifference assault; one count of

second-degree assault; one count of aggravated operating a motor vehicle while under

the influence of alcohol as a felony; two counts of operating a motor vehicle while

under the influence of alcohol as a felony; one count of driving while ability impaired

by drugs; one count of driving while ability impaired by the combined influence of

---

[1]     The same blood sample was tested by NMS Laboratories on July 31, 2011, six weeks after
it was taken, and had a BAC of 0.21%.  *See* Dkt. 16-4 at 189, 193.  The sample had 1.1 nanograms
per milliliter of THC when assessed on August 1, 2011.  *Id*. at 304-06.

[2]     The THC level detected in the second blood sample was 0.91 nanograms per milliliter,
which is less than the reporting limit -- the smallest concentration that can be reported by a
laboratory -- of one nanogram per milliliter.  *See* Dkt. 16-4 at 294.

alcohol and drugs; one count of first-degree aggravated unlicensed operation of a motor
vehicle; and one count of reckless driving, in violation of New York Penal Law
§§ 125.25(2); 125.14(1), (2)(b), (3), and (5); 125.13(1), (2)(b), and (3); 125.15(1); 120.04-a(1),
(3), and (4); 120.04(1), (3), and (4); 120.10(3); and 120.05(4); and New York Vehicle and
Traffic Law §§ 1192(2-a)(a); 1192(2) and (3); 1192(4); 1192(4-a); 511(3)(a)(i); and 1212.  *See*
Dkt. 16 at 6-7.

       The People's case at trial included testimony from McCloud and Detective
Giglio about the events leading up to the car accident; an ambulance medical technician
describing the "horrific sight" of the car accident; laboratory analysts who had tested
Williams's blood samples; and other law enforcement officers who investigated the
scene.  *See* Dkt. 16 at 22-36.  A traffic engineer also testified that the traffic light at the
intersection in question for cars traveling in the direction that Williams was driving
turns green only if a motion sensor detects a vehicle stopped at the red light or a
pedestrian presses a button to cross the street -- neither of which, according to video
surveillance footage, occurred at the time of the accident.  *See* Dkt. 16-4 at 437-43.

       Williams took the stand and invoked the defense of justification by
necessity.  Williams claimed that he was fleeing from McCloud, who had shot at him
and Harrison outside the Bar and that he was rushing Harrison to a hospital because
Williams believed that Harrison had been shot.  *See* Dkt. 16-5 at 76-79.  Williams
testified that he was driving "in fear for [his] life," *id.* at 157; that he "was only focused

6

on . . . trying to get [his] friend to the hospital to save his life," *id.* at 82; and that he "wasn't really paying attention to" "stop signs, stoplights, traffic lights," *id.* at 84, or speed limits, *see id.* at 159-60, because he "thought [his] friend was dead," *id.* at 157.  On cross-examination, however, Williams admitted that he did not believe anyone was "chasing" him when he drove away from the Bar, *id.* at 161-62, and that he did not notice any bleeding or gunshot wound on Harrison, *id.* at 156-58.  Williams also admitted that, on the night of the accident, he knew driving drunk was dangerous and could kill someone, *id.* at 142-43, but maintained that the "accident was a coin toss" and that "[a]nybody could have lost their life," including him, *id.* at 177.  He denied any responsibility for causing the accident, *id.* at 180, or Whethers's death, *id.* at 178.

On September 28, 2012, the jury found Williams guilty of all the charged offenses, except for one count of depraved indifference assault relating to Harrison's injuries.  *See* Dkt. 16-9 at 5-10.  Williams was thereafter sentenced to the following concurrent terms of imprisonment:  (1) twenty-five years to life for the depraved indifference murder conviction; (2) twelve-and-a-half to twenty-five years for each aggravated vehicular homicide conviction; (3) seven-and-a-half to fifteen years for each first-degree vehicular manslaughter, second-degree manslaughter, and aggravated vehicular assault conviction; (4) seven years for the second-degree assault conviction; (5) three-and-a-half to seven years for each first-degree vehicular assault conviction; (6) 180 days for the reckless driving conviction; and (7) one year for each remaining

7

conviction.  *See* Dkt. 6-38 at 16-17.  Williams was also sentenced to five years' post-release supervision for the second-degree assault conviction and a three-year conditional discharge for the driving-while-intoxicated convictions.  *Id*.  The court revoked Williams's driver's license for eighteen months and imposed $6,000 in restitution and over $3,000 in fines.  *Id*. at 17-18.

In June 2014, Williams, through counsel, appealed his convictions to the Appellate Division, Second Department, seeking, *inter alia*, vacatur of his convictions for depraved indifference murder and aggravated vehicular homicide on the ground that the evidence was insufficient to prove that he had acted with depraved indifference to human life and without justification.  *See* Dkt. 16-39 at 3.  With permission of the Appellate Division, Williams also filed a supplemental *pro se* brief, arguing, *inter alia*, that the verdict was repugnant insofar as he was convicted of depraved indifference murder but acquitted of depraved indifference assault.  *See* Dkt. 16-32 at 7.  The People opposed Williams's claims but requested that the Appellate Division vacate fourteen of Williams's convictions -- one count of second-degree manslaughter, three counts of first-degree vehicular manslaughter, three counts of first-degree vehicular assault, and all seven counts for violating the Vehicle and Traffic Laws -- on the ground that those convictions were inclusory concurrent counts that should have been dismissed by the trial court "upon [Williams's] conviction of greater crimes."  *See* Dkt. 16-36 at 57-58.

By decision dated May 31, 2017, the Appellate Division modified the judgment by vacating the fourteen inclusory concurrent convictions.  *See Williams I*, 55 N.Y.S.3d at 387-88 (citing N.Y. Crim. Proc. Law § 300.40(3)(b) ("A verdict of guilty upon the greatest count submitted is deemed a dismissal of every lesser count submitted, but not an acquittal thereon.")).  The nine remaining -- and most serious -- convictions were affirmed.  *Id.* at 383.  The Appellate Division held that the evidence was legally sufficient, proving "beyond a reasonable doubt that [Williams] recklessly engaged in conduct which created a grave risk of death to another person."  *Id.* at 385.  The court held that this conclusion was supported by evidence at trial that Williams, intoxicated with a BAC of 0.25% and high on marijuana, knowingly drove with a revoked license and "engaged in a high-speed chase with the police for approximately two miles . . . through narrow streets of a residential neighborhood, traveling at speeds of more than double the legal limit" and running through numerous stop signs and red traffic lights, until "he crashed into Whethers' vehicle with such force that he split the vehicle in two." *Id.* at 385-86.[3]  The Appellate Division also held that the verdict finding Williams guilty

---

[3]     One judge dissented only as to Williams's insufficient evidence claim, emphasizing that "intoxicated driving cases that present circumstances evincing a depraved indifference to human life are likely to be few and far between."  *Williams I*, 55 N.Y.S.3d at 391 (dissenting opinion) (quoting *People v. Heidgen*, 3 N.E.3d 657, 659 (N.Y. 2013)).  The facts of Williams's case, according to the dissent, did not evince the requisite mental state.  The dissent concluded that, though Williams's conduct behind the wheel was "reckless, selfish, and stupid," *id.* at 392, Williams "did not, for example, drive on the wrong side of a road or highway," engage in "a high-speed game of 'chicken,'" or "fail[] to slow down after striking a pedestrian or vehicle, *id.* at 391.

of depraved indifference murder as to Whethers was "not inherently inconsistent and repugnant to the verdict finding him not guilty of depraved indifference assault with respect to Harrison." *Id.* at 387.  Leave to appeal to the New York Court of Appeals was denied on August 15, 2017.  *See Williams II*, 86 N.E.3d at 577.[4]

On June 14, 2018, Williams moved, *pro se*, in the Nassau County Supreme Court to vacate the judgment pursuant to Section 440.10 of New York's Criminal Procedure Law.  *See* Dkt. 6-21.  He argued that the jury charge and verdict sheet were erroneous because both presented the lesser counts of the indictment before the greater offenses and neither instructed the jury that the lesser counts could be considered only in the alternative, after the jury had first acquitted him of the greater crimes charged. *Id.* at 13-14.  Because his trial counsel failed to object to this effect, Williams also asserted that he was deprived of the effective assistance of counsel.  *Id.* at 16-17.  On September 24, 2018, the Nassau County Supreme Court denied Williams's motion, concluding that his claims were procedurally barred pursuant to Criminal Procedure Law § 440.10(2)(c) because they were "clearly record based" and Williams "should have raised them on his direct appeal."  Dkt. 16-42 at 2.  Moreover, the Supreme Court noted that if there were any merit to Williams's "assertions, the Appellate Division had resolved them in [his]

---

[4]     Williams thereafter sought reconsideration of (1) his leave application, which the New York Court of Appeals denied on November 8, 2017, *see People v. Williams*, 93 N.E.3d 1220 (N.Y. 2017) (DiFiore, *C.J.*), and (2) his direct appeal, which the Appellate Division denied on August 15, 2019, *see* Dkt. 16-2.

favor when it vacated the convictions and sentences on fourteen of the counts and dismissed those counts of the indictment as inclusory concurrent counts." *Id*. at 3. Williams thereafter sought leave to appeal the Supreme Court's decision denying his motion to vacate the judgment to the Appellate Division, which denied him leave on February 22, 2019. *See* Dkt. 16-11.

### B.    Proceedings Below

Williams filed the Petition on June 5, 2019, renewing two claims raised on direct appeal and one claim raised in his motion to vacate the judgment. Dkt. 1 at 5-8.

## *DISCUSSION*

### I.    *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017). Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015). "A federal court may reverse a state court ruling only where it was

'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

Generally, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citation omitted).  That is, federal courts may not review a state court ruling that "fairly appear[s] to rest primarily on state procedural law," so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (citations omitted).  "It is well-settled that, where a claim is sufficiently based in the record, a state court's reliance on [C.P.L.] § 440.10(2)(c) constitutes an independent and adequate state law ground that precludes a federal court from further habeas review." *Vinson v. Brown*, No. 07-CV-2972, 2011 WL 7640001, at *9 (S.D.N.Y. July 11, 2011) (citing *Murden*, 497 F.3d at 195-96).

Finally, "federal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citation omitted).  Indeed, "[i]t is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citing 28 U.S.C. § 2254).

II.        *Analysis*

Williams raises three claims in the Petition:  (1) the Appellate Division erroneously modified the judgment by only vacating the lesser inclusory convictions; (2) the jury's verdict convicting him of depraved indifference murder, but acquitting him of depraved indifference assault, was repugnant and inconsistent; and (3) the evidence was insufficient to convict him of second-degree murder and aggravated vehicular homicide.  *See* Dkts. 1 at 5-8, 21 at 6-20.  I address each claim in turn.

A.        **Appellate Division's Modification of the Judgment**

Williams argues that the Appellate Division erroneously modified his convictions by vacating the lesser-included offenses while affirming the most serious convictions of depraved indifference murder, aggravated vehicular homicide, aggravated vehicular assault, and second-degree assault.  *See* Dkt. 21 at 6.  Citing to New York Criminal Procedure Law § 300.40(3)(b), Williams asserts that once the jury "reached a verdict on the lesser counts before it reached a verdict on the greater count, [he] was deemed acquitted of every greater count submitted by operation of law," and thus, the Appellate Division erred by "reinstating the murder conviction and dismissing the lesser included offense[s]."  *Id.* at 6-7.  Because the Nassau County Supreme Court denied this claim, which Williams raised only in his motion to vacate the judgment, on the ground that it was procedurally barred pursuant to Criminal Procedure Law § 440.10(2)(c), *see* Dkt. 16-42 at 2, this determination constitutes an independent and

adequate procedural bar preventing consideration of this claim on federal habeas review, *see Murden*, 497 F.3d at 195-96; *Vinson*, 2011 WL 7640001, at *9.

Nonetheless, even if this claim were not procedurally barred, it would be unreviewable for the separate reason that it arises solely under state law. *See Swarthout*, 562 U.S. at 219 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (citation omitted)).  Williams's specific contention is that the Appellate Division's vacatur of the lesser count convictions, as opposed to the greater count convictions, violates Criminal Procedure Law § 300.40(3)(b), "a provision of New York law which guides courts concerning the counts and crimes that must or may be submitted to the jury in any given case." *Khan v. Fischer*, 583 F. Supp. 2d 390, 391 (E.D.N.Y. 2008), *modified sub nom. Haji v. Miller*, No. 05-CV-2490, 2009 WL 259784 (E.D.N.Y. Feb. 3, 2009).  Because this claim is premised solely on a violation of state law, it is not cognizable on federal habeas review.  *See Khan*, 583 F. Supp. 2d at 391.

In any event, there was no error of New York law here.  "The Appellate Division routinely modifies convictions by dismissing inclusory concurrent counts . . . [by] act[ing] on the authority of CPL 300.40(3)(b)." *People v. Miller*, 845 N.E.2d 451, 452-53 (N.Y. 2006).  The section provides, in relevant part, that "[a] verdict of guilty upon the greatest count submitted [to the jury] is deemed a dismissal of every lesser count submitted, but not an acquittal thereon."  N.Y. Crim. Proc. Law § 300.40(3)(b).  The Appellate Division properly concluded that fourteen of Williams's convictions --

including, for example, Williams's convictions for first-degree vehicular manslaughter, first-degree vehicular assault, and second-degree manslaughter -- were inclusory of either Williams's convictions for aggravated vehicular homicide, aggravated vehicular assault, or depraved indifference murder.[5]  Accordingly, the Appellate Division correctly vacated these convictions.  *See People v. Robinson*, 382 N.E.2d 759, 762 (N.Y. 1978) ("[A]bsent an indication of confusion clouding the jury's intent in returning a verdict, we see no reason why the trial court cannot dismiss, as appellate courts have, lesser inclusory concurrent counts of an indictment upon the return of a verdict finding the defendant guilty of a greater count.").

Although, as Williams points out, Criminal Procedure Law § 300.40(3)(b) also states that "[a] verdict of guilty upon a lesser count is deemed an acquittal upon every greater count submitted," this provision applies only when the jury has failed to reach a verdict on the greater charge but has convicted on the lesser included offense. *See People v. Fuller*, 756 N.E.2d 61, 62 (N.Y. 2001) ("By operation of law, defendant was

---

[5]     *See, e.g.*, *People v. Aniano*, 98 N.Y.S.3d 462, 462-63 (2d Dep't 2019) ("[T]he defendant's convictions of vehicular manslaughter in the first degree, vehicular manslaughter in the second degree, reckless driving, and operating a motor vehicle while under the influence of drugs must be vacated and those counts of the indictment must be dismissed as inclusory concurrent counts of the convictions of aggravated vehicular homicide."); *People v. Ferguson*, 147 N.Y.S.3d 204, 211 (3d Dep't 2021) ("[D]efendant's conviction for vehicular assault in the first degree . . . must be dismissed as an inclusory concurrent count of aggravated vehicular assault."); *People v. Battles*, 886 N.Y.S.2d 170, 171 (2d Dep't 2009) ("As the People correctly concede, however, the conviction of manslaughter in the second degree must be vacated because that crime is an inclusory concurrent count of depraved indifference murder.").

deemed acquitted of second degree assault when the jury failed to reach a verdict as to that count, but found him guilty of the lesser included offense of third degree assault."). Indeed, this provision of Section 300.40(3)(b) is integral to ensuring the protection of Double Jeopardy, as it definitively bars retrial on the greater offense as to which the jury could not a reach a verdict. *See People v. Helliger*, 712 N.Y.S.2d 116, 117 (1st Dep't 2000), *aff'd*, 754 N.E.2d 756 (N.Y. 2001) (holding that where defendant was convicted of the lesser included offense of criminally negligent homicide, the court's failure "to give an instruction that lesser included offenses be considered only as an alternative after an acquittal of the greater offense . . . did not entitle the People to a retrial on the higher count of manslaughter . . . on which the jury was unable to reach a verdict").

These circumstances, however, are not present in Williams's case. Here, the jury returned a verdict on every single charge. *See* Dkt. 16-9 at 5-10. And "where, as here, the jury returns a verdict comprised of inclusory concurrent counts after not being instructed to consider such counts in the alternative, we are compelled to credit the jury's finding of guilt beyond a reasonable doubt on the greater count, which is deemed a dismissal of every lesser count." *People v. McIntosh*, 78 N.Y.S.3d 856, 862 (4th Dep't 2018) (citation omitted), *aff'd*, 128 N.E.3d 173 (N.Y. 2019).

Accordingly, even if Williams's claim were not procedurally barred and were cognizable on federal habeas review, it is without merit and must be dismissed.

### B.      Repugnancy of the Verdict

Nor is Williams entitled to habeas relief for his claim that the verdict is repugnant because he was found guilty of depraved indifference murder but acquitted of depraved indifference assault.  *See* Dkt. 1 at 6.  The Appellate Division rejected this claim on the merits, holding that "the verdict finding [Williams] guilty of depraved indifference murder with respect to the death of Whethers was not inherently inconsistent and repugnant to the verdict finding him not guilty of depraved indifference assault with respect to Harrison."  *Williams* I, 55 N.Y.S.3d at 387.  The Appellate Division's conclusion is entitled to "substantial deference," *Fischer*, 780 F.3d at 560, and will not be disrupted unless Williams can establish that the decision was unreasonable, *see* 28 U.S.C. § 2254(d).  Williams fails to meet this burden.

At the threshold, Williams's claim does not set forth a federal question and is, therefore, not cognizable on federal habeas review.  *See Harris v. Rivera*, 454 U.S. 339, 345 (1981) (per curiam) (holding that a defendant could not obtain relief by writ of habeas corpus on the basis of inconsistent verdicts rendered after a state bench trial because "[i]nconsistency in a verdict is not a sufficient reason for setting it aside"); *see also Smith v. Herbert*, 275 F. Supp. 2d 361, 371 (E.D.N.Y. 2003) ("A purported inconsistency in a state court verdict is generally not a basis on which to grant habeas corpus relief.").

In any event, Williams would not be entitled to habeas relief on this claim because the verdict is not inconsistent.  *See People v. Tucker*, 431 N.E.2d 617, 617 (N.Y. 1981) ("When there is a claim that repugnant jury verdicts have been rendered in response to a multiple-count indictment, a verdict as to a particular count shall be set aside only when it is inherently inconsistent when viewed in light of the elements of each crime as charged to the jury.").  When instructing the jury on depraved indifference assault, the trial court provided that, to convict Williams on this count, the jury would, *inter alia*, have to find beyond a reasonable doubt that Williams "caused serious physical injury to Laron Harrison . . . by recklessly engaging in conduct which created a grave risk of death to Laron Harrison."  Dkt. 16-5 at 383.  By contrast, the trial court instructed that for depraved indifference murder the jury would, *inter alia*, have to find beyond a reasonable doubt that Williams "caused the death of Chad Whethers . . . by recklessly engaging in conduct which created a grave risk of death to Chad Whethers."  *Id*. at 402-03.  Accordingly, although both counts required finding that Williams acted with the same *mens rea*, the counts were victim-specific.  But, as evidence at trial showed, Harrison and Whethers were not similarly situated victims:  Harrison was Williams's passenger whereas Whethers was driving in a separate car, crossing the intersection that Williams sped through.  On this record, the jury could have rationally concluded that Williams's reckless conduct did not create "a grave risk of death to" Harrison but *did* create such a risk to Whethers.  The verdict of acquittal for depraved

18

indifference assault as to Harrison and of conviction for depraved indifference murder as to Whethers is, therefore, not "inherently inconsistent." *Tucker*, 431 N.E.2d at 617.

Accordingly, even if this claim provided a possible basis for habeas relief, it is without merit and must be denied.

### C.    Sufficiency of the Evidence

In his final claim for habeas relief, Williams argues that the evidence was legally insufficient to support his convictions for depraved indifference murder and aggravated vehicular homicide. *See* Dkt. 1 at 8. The Appellate Division rejected this claim on the merits, finding that the evidence was legally sufficient to disprove Williams's justification defense beyond a reasonable doubt and to prove his guilt on these charges. *See Williams I*, 55 N.Y.S.3d at 385. This determination is entitled to "substantial deference," *Fischer*, 780 F.3d at 560, and will not be overturned by a federal court conducting habeas review unless the petitioner can establish that the state court's conclusion was "unreasonable," *see* 28 U.S.C. § 2254(d). Because Williams has failed to meet the "very heavy burden [of] convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence," *Fama v. Comm'r Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000), this claim fails to provide a basis for habeas relief as well.

When considering a sufficiency argument on habeas review, the relevant question under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

19

A federal court "must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor," and, in so doing, "must look to state law to determine the elements of the crime." *Fama*, 235 F.3d at 811 (citation omitted).

Under New York law, a person is guilty of depraved indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25(2). Recklessness is also an element of aggravated vehicular homicide. *See* N.Y. Penal Law § 125.14. Finally, because Williams "sufficiently interposed" a justification defense, "the People must prove its absence to the same degree as any element of the crime charged." *People v. McManus*, 496 N.E.2d 202, 205 (N.Y. 1986). A reasonable jury, relying on ample evidence in the record, surely could have found that the People proved each of these elements beyond a reasonable doubt.

The evidence presented at trial showed that, after engaging in a fistfight with McCloud, Williams, intoxicated with a BAC of approximately 0.25% and high on marijuana, led the police on a two-mile high-speed chase through the narrow streets of a residential neighborhood. *See* Dkt. 16-4 at 67, 591-94. Williams drove through numerous stop signs and reds lights without stopping or slowing down, and he drove so fast -- at speeds more than double the legal limit -- that Detective Giglio could not safely keep up with him. *Id.* at 596, 613-14. At the intersection where the collision

20

occurred, there was evidence, in the form of testimony from the traffic engineer and

video surveillance footage, that only Whethers had the right of way but Williams,

nonetheless, ran the red light.  *Id.* at 443, 623.  Williams crashed into Whethers's vehicle

with such force that he split the other vehicle in two -- it was "literally cut in half."  Dkt.

16-3 at 316.  After the crash, Williams fled the scene and hid in an alleyway, leaving his

seriously injured passenger, Harrison, behind in the wrecked car.  *Id.* at 415, 500-01.

Williams's own testimony at trial also supported the conclusion that he

acted recklessly and with "an utter disregard for the value of human life."  *See* Dkt. 16-5

at 401.  Not only did Williams fail to take any responsibility for the accident, *see id.* at

180 ("I'm not sure if my car hit his or how the accident happened."), but he also

affirmatively denied responsibility for causing Whethers's death, *id.* at 178 ("Q:  As you

sit here today, you know that someone did die . . . because of you, right?  A:  No.").

Williams admitted that he "wasn't really paying attention to" "stop signs, stoplights,

traffic lights," *id.* at 84, or speed limits, *see id.* at 179-80, as he was driving that night.  He

also admitted that he knew driving drunk was dangerous and could kill someone but

maintained that he "couldn't control what happened" "that night"; that the "accident was

a coin toss"; and that "[a]nybody could have lost their life," including him.  *Id.* at 176-77.

The jury surely could have reasonably concluded that this conduct created "a grave risk

of death to another person."  *See Heidgen*, 3 N.E.3d at 660-61, 667 (holding that evidence

was legally sufficient to sustain conviction for depraved indifference murder where

defendant drove "in excess of eighty miles per hour on a local road" with a BAC of

0.28% and struck oncoming vehicle "at full speed," killing passengers instantly).

   Given this evidence, a reasonable jury was also justified in rejecting

Williams's justification defense. *See People v. Craig*, 585 N.E.2d 783, 787 (N.Y. 1991)

(explaining that a justification defense, under New York law, requires proof that the

conduct is an "emergency measure reasonably calculated to avoid the harm or as a

necessary choice over alternative, legal courses of action").  Again, Williams's own

testimony and actions undermined his purported justification for driving in such a

manner.  Williams argues that he believed Harrison had been shot and feared McCloud,

pointing to evidence that Harrison told Detective Giglio he was shot and testimony

from McCloud suggesting that he fired the gun that ended the fistfight.  *See* Dkt. 1 at 8,

21 at 11-15.  But, on cross-examination, Williams admitted that he did not believe

anyone was "chasing" him when he drove away from the Bar, *id*. at 161-62, and that he

did not notice any bleeding or gunshot wound on Harrison, *id*. at 156-58.  Moreover,

even assuming that Harrison required immediate medical attention, Williams's

subsequent driving was not a "necessary choice over alternative, legal courses of

action." *Craig*, 585 N.E.2d at 787.  Heeding Detective Giglio's sirens and lights or calling

911, for example, would have been "reasonably calculated" to achieve Williams's

purported goal of getting Harrison to a hospital. *Id.*  Instead, Williams drove in a

manner that, in his own words, could have killed anyone.  Williams's actions

immediately following the collision -- leaving Harrison behind in the car and hiding from the police in an alleyway -- further undermined Williams's testimony that he was trying to save Harrison's life.  On this record, a reasonable jury could have found Williams purported justification to have been entirely incredible.  *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (noting that when reviewing a claim for insufficient evidence on a habeas review, a court must defer to the jury's "assessments of the weight of the evidence [and] the credibility of witnesses").[6]

Accordingly, because ample evidence supports the Appellate Division's conclusion that the evidence was legally sufficient to establish that Williams acted recklessly and with a depraved indifference to human life, Williams's sufficiency of the evidence claim is without merit and does not provide a basis for habeas relief.

## CONCLUSION

Williams has failed to show a basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of appealability because Williams has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253.  Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

---

[6]  The jury also heard Williams's testimony that Harrison was violating his parole curfew at the time of the accident, for which Harrison could have been arrested; therefore, it was entirely reasonable for the jury to credit this evidence, in addition to Williams's intoxication, as a credible explanation for Williams's reckless driving, as opposed to the justification he offered. *See* Dkt. 16-5 at 172-73.

23

The Clerk of the Court shall enter judgment accordingly and close this

case.  The Clerk shall also mail copies of this memorandum decision and the judgment

to Williams at his last known address.

SO ORDERED.

Dated:      New York, New York
            July 18, 2023

DENNY CHIN
United States Circuit Judge
Sitting By Designation